## THE BRITISH ISLES.

### THE BRAGDO.

(Circuit Court of Appeals, Second Circuit. February 18, 1920.)

No. 80.

1. Collision ☞71(3)—Vessel struck by second vessel dragging anchor held free from fault.

A vessel struck by another vessel, which dragged its anchor in a hurricane, *held* free from fault.

2. Collision ☞69—Vessel guilty of fault contributing to collision in hurricane held liable.

Where the manner in which a vessel anchored was a fault contributing to the collision, the fact that a hurricane caused the vessel to drag its anchor is no defense.

3. Collision ☞71(3)—Vessel which dragged its anchor and struck second vessel held liable.

Where a vessel was anchored in 40 feet of water, and with 45 fathoms chain on her starboard anchor, but was moored within 156 feet of a pier, and the vessel, being unable to pay out more chain because of that fact, dragged its anchor during a hurricane, and struck a second vessel properly moored, *held*, that the first vessel must be deemed at fault and responsible for the collision.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by Reginald Chapman Venning, master of the steamship British Isles, against the Norwegian bark Bragdo, her tackle, etc., claimed by John G. Carlsen, in which cross-libel was filed. From a decree dismissing both the libel and the cross-libel, the libelant appeals. Reversed, with directions.

Harrington, Bigham & Englar, of New York City (T. Catesby Jones, and Vine H. Smith, both of New York City, of counsel), for appellant.

Kirlin, Woolsey & Hickox, of New York City (Robert S. Erskine, of New York City, of counsel), for appellee.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge. The libel and a cross-libel concern a collision between the Norwegian bark Bragdo and the British steamship British Isles, both being dismissed by the District Judge on the ground that the collision was the result of vis major, neither vessel being at fault. The master of the British Isles alone takes an appeal.

The testimony of all the fact witnesses was taken by deposition, only experts being examined in open court. December 12, 1917, at about 10 a. m., the Bragdo came to anchor off Staten Island in 40 feet of water with 45 fathoms of chain on her starboard anchor, the wind being easterly. December 13, 1917, at about 6 p. m., the British Isles came to anchor off Clifton, Staten Island, with 75 fathoms of chain on her starboard anchor. There was half a mile between the anchorages, and neither vessel took notice of the position of the other.

Reports of the United States Weather Bureau show that from about

11 a. m. of the 13th to 3 a. m. of the 14th the barometer was falling rapidly, indicating a dangerous change of weather. At 10 p. m. of the 13th the wind backed from southeast to northeast, an indication that the change would come from the northwest. From midnight to 2 a. m. of the 14th there had been a fresh breeze from the northeast. Between 2 and 2:43 a. m. a fresh gale blew from the northeast, when in a blinding snowstorm the wind suddenly backed to the northwest, blowing for a period of five minutes at the rate of 88 miles an hour— that is, a hurricane—and at 3:01 blowing for another such period at the same rate from the northwest.

After the wind shifted to the northwest, the Bragdo drifted for half a mile, riding over the anchor chain of the British Isles, causing it to run out its whole length of 135 fathoms and then part. The starboard quarter of the Bragdo and then the poop struck the stem of the British Isles; both vessels sustaining considerable damage. The Bragdo brought up on her anchors near the place of collision.

[1, 2] We agree with the District Judge that there was no fault on the part of the British Isles, and have therefore only to consider whether there was fault on the part of the Bragdo. If she was guilty of fault contributing to the collision, the storm, though a hurricane, would not be a defense. The Louisiana, 3 Wall. 174, 18 L. Ed. 85.

[3] When the Bragdo first anchored in the easterly wind, with 45 fathoms of chain on her starboard anchor, her stern was within half a length, or 156 feet, of the piers at Stapleton. It is admitted on all hands, and the District Judge so finds, that she was improperly anchored for a storm from the eastward, because she could not pay out more chain without danger of striking the piers. But the District Judge thought that this was no evidence of improper anchorage for the storm which actually blew out from the northwest:

"Although the Bragdo substantially complied with the usual rule of 'a fathom of cable for a foot of water,' and although her anchors and cables were good, she was not properly anchored, in that she could not with safety to herself pay out more cable, if required so to do to meet an easterly storm. This was the only defect in her anchoring. The question is, however, not whether her methods of anchoring were in themselves undesirable or dangerous to herself, or altogether seamanlike; the proper inquiry is whether, under the circumstances that did actually arise, there was anything about her method of mooring that rendered her likely to inflict injury upon other vessels lying at what would be and was a safe distance in ordinary weather."

A storm from the northwest was to be expected for hours before it came, and if more chain could have been paid out as a precaution, it is fair to infer that the starboard anchor would have held, or at least the drifting would have been slower, and there would have been time to let the port anchor go, so that the Bragdo would have held up sooner than she actually did. She had 120 fathoms of chain for the starboard and 115 fathoms for the port anchor.

The survey shows that the injuries to the Bragdo were in the way of the mizzenmast and at the poop end, so that a very little more space would have enabled her to go clear. The mate admits that he would have paid out more chain as a precaution, but could not do so, because the stern of the Bragdo was so near the piers. There were on

deck only the mate and boatswain, and they admitted that they did not know they had drifted until the next morning. They could have ascertained whether the anchor was dragging by feeling the chain, but they did not do so.

In ordinary weather, with sea room in every direction, the 45 fathoms of chain might have been sufficient. Admiral Knight says on this subject at page 250 of his work on Modern Seamanship:

"It is a common rule to give, under ordinary circumstances, a length of cable equal to seven times the depth of water. This is perhaps enough for a ship riding steadily and without any great tension on her cable, but it should be promptly increased if, for any reason, she begins to jump or to sheer about; *for it is always easier to prevent an anchor from dragging than to make it hold after it has once begun to drag.*" (Author's italics.)

We think the Bragdo was at fault for anchoring where she could not pay out a greater scope of chain on the starboard anchor before the storm blew out from the northwest. If with ample sea room she had neglected to pay out more chain on the starboard anchor before the storm set in, could any one say that she was not guilty of fault contributing to the collision? It is noticeable that neither the pilot who brought the Bragdo to her anchorage nor any one from the tug which towed her there was examined as a witness.

The decree is reversed, with directions to the court below to enter the usual decree in favor of the libelant against the steamship Bragdo and her stipulators.